## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

```
DARLA BROCK,                      )
                                  )
                    Plaintiff,    )    CIVIL ACTION
                                  )
v.                                )    No.  05-1123-MLB
                                  )
JUANITA GATZ, ARNP; and LADONNA   )
REGIER, M.D.,                     )
                                  )
                    Defendant.    )
                                  )
```

### MEMORANDUM AND ORDER

This case comes before the court on defendants' joint motion for summary judgment. (Doc. 30). The motion has been fully briefed and is ripe for decision. (Docs. 31, 32, 43, 44). Defendants' motion is granted, for the reasons herein.

### I.  FACTS

On July 24, 2001, plaintiff was seen by Juanita Gatz for the purpose of evaluating a skin lesion (3 moles) on plaintiff's right thigh. Plaintiff had read an article about checking moles and was concerned. Gatz offered plaintiff various treatment options. Gatz informed plaintiff that she could seek treatment in Vermont (her new residence) or that Gatz could treat the lesion with cryotherapy.[1] Plaintiff elected to treat the lesion with cryotherapy. LaDonna

---

[1] Gatz testified that she also recommended that plaintiff be referred to a dermatologist in Kansas. Plaintiff does not recall that recommendation. This factual controversy has not been considered in deciding whether to grant or deny the motion.

Regier was Gatz' supervisor and signed plaintiff's chart.[2]  After the procedure, Gatz counseled plaintiff to check the area and seek treatment if there was any change.  Plaintiff did not notice any change in the area until late January or February 2003.  Plaintiff made an appointment with Dr. Benjamin, a dermatologist who had no affiliation with defendants.  (Docs. 32 at 4-5; 43 at 3-4).

On February 4, 2003, plaintiff was seen by Dr. Benjamin to evaluate the area.  Plaintiff informed Dr. Benjamin of the prior treatment to the area.  Dr. Benjamin opined that plaintiff should have had the area biopsied and that the lesion should not have been treated with cryotherapy.  Dr. Benjamin offered to biopsy the lesion, but informed plaintiff that insurance would not pay for the removal.  Dr. Benjamin did remove a lesion on plaintiff's back and had it biopsied.  Dr. Benjamin told plaintiff that the removal of the lesion on her back would be covered by insurance.  The biopsy showed that the lesion on plaintiff's back was benign.  Plaintiff elected not to have Dr. Benjamin remove the lesion on her leg and no biopsy was done.[3]  (Doc. 32 at 5-6; 43 at 4-6).

Approximately a year later, the appearance of the lesion on her leg changed again.  In February 2004, plaintiff made an appointment with Dr. Christie, another dermatologist, to have the lesion removed.  Dr. Christie removed the lesion and had it biopsied.  On April 6,

---

[2] Reiger, however, did not see plaintiff on July 24 and signed the chart at some later point in time, presumably after plaintiff was living in Vermont.

[3] At the time of the appointment, Dr. Benjamin did not inform plaintiff why insurance would not cover the removal of the lesion on her thigh.  Plaintiff assumes this was because Dr. Benjamin told plaintiff the lesion was "fine."  (Doc. 31, exh. A at 54).

2004, plaintiff was diagnosed with melanoma.  (Docs. 32 at 6-7; 43 at 7, 13).

Plaintiff filed this lawsuit on April 28, 2005.  Defendants have moved for summary judgment on the basis that plaintiff's claim is barred by the statue of limitations.

## II.  SUMMARY JUDGMENT STANDARD: FRCP 56

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  In determining whether a genuine issue of material fact exists, the court "view[s] the evidence in a light most favorable to the non-moving party."  Qwest Corp. v. City of Santa Fe, N.M., 380 F.3d 1258, 1265 (10th Cir. 2004) (quotation omitted).  Where, as here, a party seeks summary judgment regarding some, but not all, of the facts or issues in the case, Rule 56(d) authorizes the court to craft an order disposing of those issues for which there is no need for a trial.

## III. ANALYSIS

The statute of limitations for a medical malpractice claim under Kansas law is as follows:

> A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time

> of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.

K.S.A. 60-513(c).

Defendant asserts that plaintiff's injury was reasonably ascertainable, at the latest, after her visit to Dr. Benjamin in February 2003. Plaintiff responds that the injury was not reasonably ascertainable at that time since Dr. Benjamin told her that the lesion was "fine" and did not biopsy the lesion. Therefore, plaintiff asserts that her injury was not reasonably ascertainable until her appointment with Dr. Christie in 2004.

In <u>Bradley v. Val-Mejias</u>, 379 F.3d 892, 898 (10th Cir. 2004), the Tenth Circuit examined the meaning of "reasonably ascertainable:"

> The phrase "reasonably ascertainable" means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation." <u>Davidson v. Denning</u>, 259 Kan. 659, 914 P.2d 936, 948 (1996). In other words, "'Kansas' "fact of injury" standard postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant." <u>Benne v. Int'l Bus. Mach. Corp.</u>, 87 F.3d 419, 427 (10th Cir.1996).

In February 2003, more than two years before she filed this lawsuit, plaintiff was told by Dr. Benjamin that Gatz' course of treatment was incorrect. Importantly, Dr. Benjamin stated that a lesion should always be biopsied and not "burned off." Plaintiff generally understood the purpose and significance of a biopsy. However, and apparently in violation of his own rule, Dr. Benjamin did not biopsy the lesion but instead examined it visually, told plaintiff

it looked "fine," and that the "lesion was probably benign and there was nothing to worry about." (Doc. 43 at 14). Plaintiff asserts: "Obviously that mole would have been removed and biopsied by Dr. Benjamin if he had considered it to be an area of concern. . ." (Doc. 43 at 24-25).

Plaintiff does not appear to recognize the inconsistency of this assertion. Dr. Benjamin was critical of Gatz for not biopsing the lesion in 2001 ("a lesion should always be biopsied") but he did not biopsy the lesion in 2003. By alleging that defendants were negligent in failing to biopsy the lesion in July 2001, plaintiff is assuming that the lesion was cancerous in July 2001 and that a biopsy would have revealed the cancer. Plaintiff would have no claim if a biopsy had been done which proved negative or if cancer had developed after 2001.

But regardless of evidence, or lack thereof, of the existence of cancer, what Dr. Benjamin did, and failed to do, bears directly on plaintiff's duty to reasonably investigate. Plaintiff was told by Gatz to seek treatment if the lesion returned. Plaintiff knew enough about lesions to follow this advice. When Dr. Benjamin told her that a lesion "always" should be biopsied, but then did not do so, it was <u>not</u> reasonable for plaintiff to accept Dr. Benjamin's statement that the lesion was "fine." Plaintiff had an obligation to conduct a "reasonable investigation" in light of Dr. Benjamin's inconsistent medical treatment and advice.

Plaintiff cites <u>Jones v. Neuroscience Assocs., Inc.</u>, 250 Kan. 477, 827 P.2d 51 (1992), <u>Cleveland v. Wong</u>, 237 Kan. 410, 701 P.2d 1301(1985) and <u>Hecht v. First Nat'l Bank & Trust Co.</u>, 208 Kan. 84, 490

-5-

P.2d 649 (1971) to support her position that she was entitled to rely on Dr. Benjamin's "diagnosis" that the lesion was "fine."

In Jones, the plaintiff had surgery to alleviate recurring pain in her arm. After the surgery, the plaintiff could not move her hand and all of her fingers were in a fist. The defendant continued to tell the plaintiff that it could take 2-4 years post-surgery before her condition would resolve. The court held that the question of when the plaintiff could have reasonably ascertained her injury was in dispute. See Jones 250 Kan. at 478-79, 489.

In Cleveland, the court held that although the plaintiff had experienced incontinence and impotence immediately after the surgery, the plaintiff could not have reasonably ascertained the fact of injury since the defendant assured the plaintiff that those symptoms were normal following the surgery and thus had ". . . no reason to suspect that those conditions were permanent or . . . the result of . . . malpractice." 237 Kan. at 414.

In Hecht, the plaintiff had received radiation therapy from the defendants over a period of approximately two years. The Kansas Supreme Court stated that her injury, an ulcer in the groin area, was not reasonably ascertainable from the radiation therapy since defendants had repeatedly opined that the groin area was recovering and that it would "heal itself." As in Jones, the court held that this sort of advice created a dispute regarding when plaintiff could reasonably have ascertained her injury. See Hecht, 208 Kan. at 87-92.

These cases are distinguishable. Plaintiff was not told by Gatz that a recurrence of the lesion would be normal. Rather, plaintiff was told by Gatz to seek the care of a specialist if the lesion

-6-

returned.  Gatz never saw plaintiff again.  Reiger, of course, never saw plaintiff.  In contrast, the plaintiffs in <u>Jones</u>, <u>Cleveland</u> and <u>Hecht</u> were all repeatedly told that the treatment was proper and/or that their symptoms were normal.  Nothing remotely comparable occurred in this case.

Accordingly, plaintiff's injury (assumed, but unproven, cancer) was reasonably ascertainable when she saw Dr. Benjamin in February 2003, more than two years before the filing of her complaint.[4]

**III. CONCLUSION**

Defendants' motion for summary judgment (Doc. 30) is granted.[5]

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the

---

[4] Since the court has determined that the statute of limitations began to run in February 2003 at the latest, the court need not address defendants' alternative position that the statute may have begun to run at an earlier point in time.

[5] The court has concluded that oral argument would not assist the court in its ruling.  Accordingly, plaintiff's request for oral argument (Doc. 45) is denied.

standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

     IT IS SO ORDERED.

     Dated this __19th__ day of April 2006, at Wichita, Kansas.

                                    s/ Monti Belot
                                    Monti L. Belot
                                  UNITED STATES DISTRICT JUDGE